## STATE ex KOOK v CIVIL SERVICE COMMISSION OF WOOSTER et

Ohio Common Pleas, Wayne Co

Decided April 7, 1934

Critchfield, Critchfield & Critchfield, Wooster, for relator.

Marion F. Graven, Wooster, for defendants.

## OPINION

By MOUGEY, J.

It appears in this case, that the facts are substantially as follows: Sometime the first part of April, 1929, one of the patrolmen of the city of Wooster resigned, and there being no eligible list from the civil service at that time, the plaintiff relator was given a temporary appointment by the appointing authority of the safety department in the city of Wooster, for a period of thirty days; and sometime within that thirty days, as he was acting as a patrolman for the city of Wooster, he took an examination before the city municipal civil service commission. He filed an application and he took an examination as provided by the civil service commission. There was also another party who took the examination at the time, and the result was that the plaintiff relator was given a grade of 90, and the other party taking the examination was given a grade of 85. It therefore appeared that the plaintiff relator's name only was submitted by the municipal civil service commission to the appointing authority, and that certificate designated that it was a noncompetitive examination, but that he was eligible for appointment as patrolman for the city of Wooster.

He therefore served in that capacity from the 29th day of April, 1929, to the present date. However, on January 15, 1934, the city of Wooster passed an ordinance, which in substance was to the effect that any person arriving at the age of 60 years, on the police force, would not be thereafter able to serve as a patrolman. This ordinance, the evidence shows, went into effect on February 15, 1934. On that day, it appears, the plaintiff relator was called into the mayor's office, and before the mayor and safety director of the city of Wooster, was asked what he was going to do in reference to this ordinance— whether he was going to resign. And it is stated that he was not going to do anything—going to hold on. I believe that is the sum and substance of the conversation had between the plaintiff relator and the mayor and service director.

Thereafter, the pay vouchers of the plaintiff relator from February 15, 1934 to April 1, 1934, were held up for the reason that the civil service commission further refused

to certify the payment to the auditor of the city, or rather, for the placing on the roll of patrolmen for O.K. and payment, by the safety director. It further appears that from the date of the plaintiff relator's application by the safety director on April 29, 1929, up to February 15, 1934, all pay vouchers for his services as patrolman were so certified by the civil service commission of the city and were paid by the auditor, giving to him the proper voucher upon the treasurer of the city.

This case comes into this court by way of an action of mandamus, asking this court to require the civil service commission of this city to certify his name as patrolman for payment during the period of February 15, 1934 to April 1, 1934; and also to mandamus the present safety director and auditor to do their duty in reference to the payment of his services, which he claims to be $202.50 for that period.

The law of the state of Ohio in reference to civil service commissions, §486-14 GC, provides as follows:

Temporary and exceptional appointments—"Positions in the classified service may be filled without competition as follows: Whenever there are urgent reasons for filling a vacancy in any position in the classified service and the commission is unable to certify to the appointing officer, upon requisition by the latter, a list of persons eligible for appointment after a competitive examination, the appointing officer may nominate a person to the commission for non-competitive examination, and if such nominee shall be certified by the commission as qualified after such non-competitive examination, he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination; but such provisional appointment shall continue in force only until regular appointment can be made from eligible lists prepared by the commission, and such eligible lists shall be prepared within ninety days thereafter. In case of an emergency an appointment may be made without regard to the rules of this act, but in no case to continue longer than thirty days, and in no case shall successive appointments be made."

We find in the **Ohio Appellate Reports 23, page 62, City of Toledo v Osborne, (5 Abs 2)** as follows:

"The purpose of civil service law is to create merit system for determination of

fitness and efficiency of those within classified service and prevent discharge without just grounds."

"Payment of salary of employee in classified service, which is fixed and determined may be compelled by mandamus to compel issuance of warrant."

We further find in the section of the statute §486-17a **GC**: "The tenure of every officer, employe or subordinate in the classified service of the state, the counties, cities and city school district thereof, holding a position under the provisions of this act, shall be during good behavior and efficient service; but any such officer, employe or subordinate may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office."

So it becomes necessary to determine, first, the question whether the plaintiff relator occupies a position within the civil service classification of this city; and if he does so occupy such a position, whether he was wrongfully deprived of his money.

The defendants contend that he had only a provisional appointment, and that therefore he was not in civil service under the meaning of being classified civil service. The court takes a different attitude toward that proposition, and believes that the plaintiff relator was under classified civil service. It becomes necessary to go a little deeper than the mere reading of the words of the section of law to get the meaning and intent. In other words, the philosophical background of purpose of the statute. The civil service statutes of Ohio were passed for the sole purpose of creating a merit system, if they were passed for anything at all. In other words, that people who were qualified for service should be the ones to hold the position. That being one of the philosophical reasons behind the passage of such a law; and another reason being that it should be kept out of politics by change of administration. A person who has performed his duty should not be at the will and whim of the next succeeding party.

How do we determine whether they are fit or qualified? We determine that by an examination. Now this party, who is

the plaintiff relator, took such an examination as the civil service gives to all parties that are taking the examination for patrolmen. He passed that examination with a grade of 90; he was certified by the civil service commission to the appointing authority and was appointed provisionally it was true, because they designated it at that time a noncompetitive examination. Now, what does the law say in regard to that? It says, as follows: "But such provisional appointment shall continue in force only until regular appointment can be made from eligible lists prepared by the commission, and such eligible lists shall be prepared within ninety days thereafter." Could the commission now prepare eligible lists to take the place away from Mr. Kook? It says the commission shall prepare eligible lists. Now I can see the philosophical reason for that particular thing, because when you read through the whole civil service act. in a number of places it shows that even though they have passed the examination, they must serve a probation period of three months, or ninety days, before their appointment goes into effect.

Now, let us see what happens here. If the civil service commission had held a competitive examination within three months, as enjoined by law that they should hold, to take away the position that Mr. Kook was filling. Mr. Kook would have had an opportunity to have taken that examination along with all others that wanted to take the examination or that had seen the advertisement in the paper. Now. was there any injustice done to the public? Let us examine into that. If there were any parties within the city of Wooster that wanted to become patrolman, that wanted to be a policeman in this city, they knew and the records were very clear, that Mr. Kook had this provisional appointment for a period of ninety days; they knew it was enjoined upon the civil service commission by law that they had to provide a competitive examination within the ninety day period; therefore, any persons who wanted to take that examination could have come to the civil service commission and asked them to do their legal duty. If they did not, they could have brought a mandamus action to make them do it in this very court. And therefore it appears that at that time there were no other persons who wanted to take that examination, no persons seemed to be interested in this matter with the exception of another party who took the examination at the time Mr. Kook took it—that was Mr. Donley, who secured a grade of 85.

So the public, or those of the public who wanted the position of patrolman, have not been harmed in any way, because they had ample opportunity to go to the board and request them to do their duty, but they did not do it. The civil service commission and the appointing authority after that period of ninety days, which as you read this law is a sort of probation period, seemed to be perfectly satisfied with the services that Mr. Kook was rendering and, in fact, the civil service commission of this city each two weeks for a period of four years and nine months was certifying him regularly as patrolman upon the roll of the payees of the city of Wooster. We cannot go behind the findings that he was found eligible by the civil service commission, or the fact that for a period of that length of time that they were continually, twice monthly, certifying him as patrolman for the city of Wooster.

My finding in regard to the law in that respect is that the civil service commission or any interested citizen or applicant, had a period of ninety days in which to come in and ask the civil service commission to act, or on their own responsibility could have acted within ninety days. And, when they did not so act, Mr. Kook's appointment at that ninety day period merged from a provisional into a permanent appointment.

Now, they talk about the matter of Mr. Kook being fifty-five years of age when he took this examination. His application to the civil service commission showed that he was fifty-five years of age; it is signed by him with all other data above his name; it is sworn to before the clerk of the civil service board. The civil service board, it is true, prior to that time had made a rule that no person over fifty years of age could take this examination; but the law of this state is to the effect that a board can waive its own rule, and this they were doing in this particular case, waiving their own rule. And I believe the case is decided in **Ohio Appellate Reports** 3, at page 426, which so far as the court can learn has never been reversed. The contention there was that the patrolman had not served two years in the department as a corporal. and therefore was not qualified because of the rule made by the civil service commission that no person could take the examination for lieutenant until he had served two years as a corporal. They permitted this man to take the examination when he had not served the time and the defendants con-

tended that he was ineligible for the examination at that time and was improperly placed upon the eligible list by the civil service commission and that therefore his appointment, which was then made by the director of public safety from the eligible list, was illegal.

The court held, "We are of the opinion that the civil service commission had the power to so waive or suspend this rule, that its action in making all the corporals then on the force eligible to this examination was within its power, that the examination was within its power and that the examination was held according to law."

This case also says, "The civil service commission having been invested by law with the power to determine the eligiblity of Weiss (that is, the plaintiff relator) and having determined him to be eligible, is without power to subsequently reverse its decision."

"If the power has by law been given to an officer to determine a question of fact, his determination is final, in the absence of any controlling provision of statute, provided he has not been guilty of an abuse of discretion. Such a determination is binding upon the successors in office of the officer who made it."

So in regard to the age, the court finds that the civil service commission waived that rule that they had; they had full knowledge of it, it was right on his application, and they waived that and certified him as eligible for patrolman.

Now the only other question as I have it, was the matter of this ordinance passed on January 15, 1934 by the council of the city of Wooster. It is a well recognized fact that no board, or council or body, that has the power to make rules, ordinances, rules or regulations of any sort, may make any regulation derogatory to or adverse to the laws of the state of Ohio. The legislature of this state when they passed the civil service law, left it open to every intelligent man or being existing in the state of Ohio; they did not make any age regulation, nor did they set down who could, or could not, take the examination, as given here in one of the reported cases—I cannot just find the page now—but what I want to express is this, it was open to all.

Now, in the first place, the court is of the opinion that even though the council of the city of Wooster had the power to pass

such an ordinance it would not be retroactive and could not apply to a person who had vested right prior to the time of passing the ordinance.

The second proposition is, the court believes that this ordinance is in derogation of the civil service laws of the State of Ohio. It is not for a city council, it appears to me, to add on to or to say what regulation they are going to put on to certain laws that have been passed by the legislature of the state of Ohio. There may be many arguments advanced, pro and con, whether a young man or older man would be the better in service. That all depends on individuals. I wonder if someone had told Theodore Roosevelt when he was fifty or fifty-five that he was not as good a man as at twenty-one to thirty when he was a failure, trying to get back his health! I wonder if somebody told Theodore Roosevelt when approximately sixty years of age and trying to have President Wilson allow him to lead some more rough riders in the war, that he was not as good a man as at thirty-five or forty, what his idea would have been. It all depends upon the man, and any rule laid down along that line in my estimation is an unfair rule. The legislature of the state of Ohio made no such rule; I do not believe the city of Wooster, or council of the city of Wooster, has such authority; I take it is absolutely derogatory to the state law of Ohio, in reference to the civil service law, I mean.

I therefore hold that the plaintiff relator is under civil service in the employ as patrolman for the city of Wooster, and that his tenure of office is, as stated by the section of law §486-17a GC, during good behavior and efficient service.

I am not determining in this case whether Mr. Kook, because of the age of sixty years, or because of any other facts that occurred while he was upon the police force of the city of Wooster, subject him to be removed; that is not the question in this case; if he is subject to removal, there is ample provision made in the law whereby he can be served with an order of removal and reasons given, and given his day of hearing and trial. And after all, that is the greatest American right, that each and everyone of our American citizens have the right of trial in an open court, to determine whether or not we are entitled to something, or whether we are not entitled to that.

And so I hold, that he is entitled to the

pay from February 15, 1934 to April 1, 1934, as patrolman for the city of Wooster, with a judgment for that amount and its costs.