### KLUTH v. ANDRUS, et al.

Common Pleas Court, Cuyahoga County.

No. 613782.  Decided July 27, 1950.

Neil W. McGill, Ralph L. Bailey, Cleveland, for plaintiff.

George J. McMonagle, Emery C. Smith, Cleveland, for defendants.

Harold H. Gorman, Cleveland, amicus curia.

## OPINION

By BLYTHIN, J.

This cause came to trial, and at the conclusion of the opening statements of counsel for the parties the plaintiff moved for a finding and judgment in his favor on the pleadings and opening statements. Defendant Martin F. Patton made a similar motion for a finding and judgment in his favor. Prior to June, 1949, the plaintiff Kluth and the defendant Patton were members of the Police Department of the city of Rocky River, each having the rank of Sergeant. It became necessary to appoint a Lieutenant in the Department and the Civil Service Commission issued notice of an examination to be held June 22, 1949, for promotion to the Lieutenancy and both Kluth and Patton entered that examination. It was divided into three parts or sections—Practical, Performance Record—Intelligence Test, each part or section to be given a weight of 33.1/3%. Each candidate was also entitled to a seniority credit. The Civil Service Commission graded the two candidates as follows:

| Kluth | | Patton |
|---|---|---|
| 100 | Practical exam. questions | 94 |
| 55.9 | Intelligence Test Questions | 65 |
| 89 | Performance Test | 75 |
| 244.9 | TOTAL | 234 |
| 81.6 | 1/3 of total | 78 |
| 5.8 | Seniority credit | 8.2 |
| 87.4 | Final Grades | 86.2 |

The grades were certified by the Civil Service Commission to the appointing authority and as a result of such certification the authority promoted Kluth to the position of Lieutenant and he entered upon the duties of that office and performed them for a period beyond ninety days and there is no claim that his services were not fully satisfactory dur-

ing the time that he was performing them, from August 16, 1949, to a date about March or April 1950. On October 31, 1949, Patton filed his action in this court (No. 608,225) against the Civil Service Commission of said city as a body and its members individually, against the city of Rocky River, its Mayor and its Director of Public Safety. He sought a writ of mandamus to compel the authorities to appoint him, Patton, to the Lieutenancy on the ground that the gradings of the candidates had not been correctly made .and recorded, and that if they had been correctly made and recorded he, Patton, would have been shown to have the higher grade and not Kluth, the appointee. He further claimed that the Performance Test given was without basis and that credits given on it were void and illegal for the reason that the city of Rocky River had no performance records from which the two candidates could be rightfully graded. He, Patton, then prayed that if he be not found entitled to promotion on the basis of his claim, proper grading would show him first on the list, and prayed that the examination held and all proceedings resulting from it be held null and void and that the authorities be enjoined from paying any funds of the city as compensation to any person appointed to the office of Lieutenant pursuant to any certification on the basis of the examination so claimed to be illegal.

Hearing was held and this court, (Connell, J.) held that the Performance Test given was illegal and void and that the appointment of Kluth pursuant. to his certification on the basis of the grades recorded was contrary to law and null and void. The court then issued an order to vacate the appointment of Kluth and gave the Civil Service Commission its choice of one of two courses to follow:

(1) Make up the Civil Service eligible list for Lieutenant of Police of Rocky River, Ohio, and make appointment to the vacancy for the office of Lieutenant of Police therefrom as provided by law based upon the intelligence test, practical police questions and seniority rights as provided for in said examination of June 22, 1949, disregarding and excluding therefrom the so-called "performance records" as adduced in evidence, or

(2) Make up the eligible list and make appointment to the vacancy for the office of Lieutenant of Police of Rocky River, Ohio, therefrom as provided by law based upon the intelligence test, practical police questions, seniority rights as provided for in said examination of June 22, 1949, and a new competitive section of said examination as determined by the Respondent, Civil Service Commission of Rocky River, Ohio,

which new section is to be advertised and conducted in conformity with the Civil Service Laws of Ohio.

This order was entered on February 13, 1950.

The Civil Service Commission selected plan No. 2, and called a new, partial, examination for March 27, 1950. By this time the personnel of the official family of the city had undergone quite a change. The city had a new mayor, a new director of public safety and two new members of the three-man civil service commission. The same two persons, Kluth and Patton, entered the examination, but Kluth did so under protest, having first communicated on March 22, 1950, to the Commission his protest and a claim of reservation of his rights in all respects.

The grades made by the candidates in that examination were recorded as follows:

| Kluth | | Patton | |
|---|---|---|---|
| | Practical exam. | | |
| 100 | questions | 94 | (Original exam). |
| 55.9 | Intelligence Test | 65 | ” ” |
| | | | |
| 15 | Service Record | 15 | (New exam.) |
| 19.166 | Memory Test | 20.166 | ” ” |
| 36 | Observation Test | 38 | ” ” |
| 0 | Target practice | 0 | ” ” . |
| | | | |
| 226.066 | TOTAL | 232.166 | (Both exams.) |
| 75.3553 | 1/3 of total | 77.3887 | ” ” |
| 5.8 | Seniority credit | 8.8 | ” ” |
| | | | |
| 81.1553 | FINAL GRADES | 86.1887 | ” ” |

Kluth promptly protested and challenged some of the grading and reaffirmed his reservation of his rights as a promoted appointee under the original certification on the basis of the first examination. Whether his claims of grading errors in the second examination have merit is not for decision in any consideration of the motions now before the court. That issue will be for decision upon trial, if trial is had on the merits. Kluth now claims that on April 28, 1950, he was notified of the fact that the Commission rated Patton first on the new list and that the Director of Public Safety was about to appoint Patton to the Lieutenancy to which Kluth was appointed on the basis of the original certification, and which office he still claimed to be holding. Kluth then filed this action (May 2, 1950) seeking a temporary re-

straining order, which was granted, and seeking finally to enjoin the Director of Public Safety from ousting him or appointing Patton as Lieutenant of Police and seeking a mandatory injunction ordering the Civil Service Commission to withdraw its certification of Patton on the ground that there is no vacancy in the office and that the one-third examination held March 27, 1950, was illegal and void, and that an ouster of plaintiff, Kluth, would be a violation of his constitutional rights.

It is conceded, as it must be, that Kluth was not a party to cause No. 608,225 at any time, and it is clear that he actually served as Lieutenant of Police from the date of his appointment, August 16, 1949, to a date following February 13, 1950, when the order was entered in said Cause No. 608,225 and that his failure to serve since that date has been due to the conflicting claims of the parties and the pendency of this cause seeking to have them adjudicated.

Able counsel for the parties to this cause have been exceedingly generous in their opening statements, and submitted to the court for his information the files in said Cause No. 608,225, the tabulations of grades herein shown and the files in the Madden case, infra.

Two legal questions are presented on the motions for findings and judgments:

(1) May the plaintiff herein Kluth, attack the judgment in Cause No. 608,225 in this court, he admittedly not being a party thereto but what he claims to be his settled and vested rights being affected thereby?

(2) Under the state of facts presented, had Kluth, at the date of the entry in Cause No. 608,225, been so certified, appointed and served in the office of Lieutenant of Police in a manner and for such a period of time as to entitle him to hold such office unless and until removed in the manner prescribed in §486-17a GC?

Question I.

Are the findings of the court in Cause No. 608,225 res judicata as to Kluth?

It must not be overlooked that Kluth had been appointed a Lieutenant before cause No. 608,225 was filed on October 21, 1949. Patton, the relator in that cause alleged in his petition that he had been denied the privilege of seeing his examination papers, etc., "until after the list therefor was certified and the appointment made of another member of the Division of Police to the office of Lieutenant." Before any action of any kind was instituted, Kluth was a regularly appointed Lieutenant with tenure in office and apparently sub-

ject to removal or demotion only as provided by §486-17a GC. He was not made a party to that action.

It is a well established principle that one's vested, substantial or property rights cannot be adjudicated, and be binding on him personally, in his complete absence.

**23 O. Jur. 836, Sec. 527.**

"It is a fundamental principle of all rational systems of jurisprudence that one having no notice, either actual or constructive, of a judicial proceeding, should not be concluded by it. It has accordingly been declared to be elementary that in order that a judgment may be conclusive against a person, he, or one with whom he is in privity, must have had notice and an opportunity to be heard, because the opportunity to be heard is an essential requisite of due process of law in judicial proceedings. The general rule is applicable to judgments rendered upon constructive service in accordance with the statutes relative thereto."

See **Feuchter v. Keyl, 48 Oh St, 357,** and **Auglaize Box Board Co. v. Hinton, et al., 100 Oh St, 505.**

See also Postal Tel. Cable Co. v. City of Newport, 247 U. S., 464.

In discussing the conclusive effect of a judgment the court said—Page 476,—

"The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. * * * The opportunity to be heard is an essential requisite of due process of law in judicial proceedings * * *. And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard * * *, so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein."

Question II.

The answer to this question must be based solely on the provisions of law without regard to any rules of the Civil Service Commission. The code provides that the Commission shall or may enact rules covering procedures and details necessary to the proper conduct of its affairs and the performance of its duties but no specific rule is pleaded in this cause.

Three major steps are necessary to appointment or promotion to a position in the classified service of a governmental unit under the provisions of law governing that service. They are (a) One must enter a competitive examination and make the required grades. (b) One must be certified by the Civil Service Commission to the appointing authority as being eligible for appointment or promotion. (c) One must be so appointed or promoted by the appointing authority. Sec. 486-15 GC provides for the promotional examinations. When one has qualified and been appointed or promoted, he becomes entitled to a status under the provisions of §486-17a GC which section is as follows:

"The tenure of every officer, employe or subordinate in the classified service of the state, the counties, cities and city school districts, thereof, holding a position under the provisions of this act, shall be during good behavior and efficient service; but any such officer, employe or subordinate may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office."

Long after the effective date of §486-17a GC there was enacted, effective July 28, 1943, §486-13 GC as now in effect, which, in its pertinent part, provides as follows:

"* * * All original and promotional appointments shall be for a probationary period of not to exceed three months to be fixed by the rules of the commission, and no appointment or promotion shall be deemed finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the appointing officer shall transmit to the commission a record of the employe's service, and if such service is unsatisfactory, the employee may, with the approval of the commission be removed or reduced without restriction; but dismissal or reduction may be made during such period as is provided for in §§486 and 486-17a GC. * * *."

On first view this would seem to add an item (d) to the major steps already mentioned, but on careful analysis it would seem clear that such is not the case. Sec. 486-17a GC

is still the section which establishes tenure and the provision of §486-13 GC above quoted is merely a temporary, highly limited restriction of the right of tenure guaranteed by the provisions of §486-17a GC. It will be noted that the restriction of §486-13 GC has practically nothing to do with the Civil Service Commission or its chief function, nor with grades or certification; nor, indeed, with appointment. It is a safeguard to the public against having a person secure finally the rights vested in him by the provisions of §486-17a GC if it should develop that the good grading, the certification and appointment, whether original or promotional, have been conferred on one who in spite of every academic evidence to the contrary, is actually not able to satisfactorily perform the duties of the office which he is assuming. Judgment is vested in the appointing authority—the employe's superior and the person generally responsible for the actual performance of the department under his control. The time is limited to a period not exceeding three months. The provisions of §486-13 GC are not to be exercised excepting in a case of **unsatisfactory service** in the new position assumed, and it may not be done without approval of the Commission. By its very terms it provides that the employe may be removed or reduced within the three months' period in accordance with the provisions of §486 and §486-17a GC so that he does have tenure from the day of appointment subject to the one possibility of unsatisfactory service within the maximum three month probationary period. The court has no difficulty whatever in determining that if any attack upon Kluth's position can succeed in this cause it would be equally effective after the probationary period is satisfactorily served as it would have been within that period. This is stated for the sole purpose of making clear the court's views without suggestion that it can be decisive of any issue in this cause. Kluth was appointed and did serve a period of over three months. By reason of those two facts he now claims to have tenure and not to be subject to removal or reduction by anyone except under the provisions of §486-17a GC.

Having expressed the view that the plaintiff herein, Kluth, can attack the judgment in Cause No. 608-225 in this court there remains only the question of whether or not any orders in that cause, and their enforcement, violate his rights to an extent that entitles him to relief at the hands of this court in this cause. The effect of those orders, if made effective, would be to deprive the plaintiff herein, Kluth, of his Lieutenancy. He entered the examination, he was certified by the Civil Service Commission as being the high man,

he was appointed to the position of Lieutenant and entered upon his duties in that office.

The findings in said Cause 608,225 were to the effect that the Civil Service Commission had erred in one section of the examination. There was no finding of fraud on the part of any person or body; there was no finding, nor is it even claimed that Kluth had anything whatever to do with the error or the proceedings beyond his entering the examination. The error was found and declared in a proceeding to which he was not a party and if it is to be made effective against his rights he will merely be its victim.

Mention has been made herein of the Madden case, same being that of Michael J. Madden, Plaintiff v. Dan B. Cull, et al., as Commissioners, No. 526,546 in this court, and No. 19399 in the Court of Appeals of the Eighth District of Ohio (1943). It is not helpful on this branch of this case because the Madden case was instituted with a view to denying to the Civil Service Commission the right to certify an eligible list following an examination for positions in the Fire Department in the city of Cleveland. No list was certified nor appointments made as a result of that examination. Error was found and the court made an order somewhat analogous to the order made in Cause No. 608,225 in this court. The entire matter was corrected immediately following the examination and before certification of any list.

The Supreme Court of Ohio has had before it the precise question here presented and this court must follow the law as pronounced by that court.

**State ex rel., Byrd & Ex. Rel. Kosnagle v. Sherwood, Director of Dept. of Public Welfare, et al., 140 Oh St, 173, 23 O. O. 403,** The syllabi of that case are as follows:

1. The removal of one regularly appointed to a position in the classified service from a list of persons whose names had been duly certified to the appointing officer in accordance with the provisions of §486-13 GC, and who had rendered satisfactory service for more than 90 days is governed by the provisions of §486-17a GC.

2. Though an incorrect certification of an eligible list from which appointments to positions in the classified service are to be made may be subsequently corrected, such change does not authorize the peremptory dismissal of an employee who prior thereto had been appointed pursuant to such certification and served satisfactorily longer than the probationary period.

The court will not lengthen this memorandum by a recital of the facts in that case. Suffice it to say that it is difficult

to understand how they could be more alike in principle to the facts now before us than they actually are. It was found in that case that persons were certified for appointment who should not have been so certified, and they were appointed when in fact they should not have been appointed. The court, speaking through Matthias, J., says, at Page 178:

"The appointment of the relator and relatrix was regularly made by the respondents from the list of eligibles certified by the Civil Service Commission. This court has recently held that where a person on a competitive eligible list is duly certified by the Civil Service Commission to the head of the department for appointment to a position in such department and the appointment has been regularly made, it becomes effective from the date of the appointment. **State ex rel., Hoornstra v. Atkinson, Admr., etc., 136 Oh St, 569, 17 O. O. 237.**

"If the relator or relatrix had sponsored or participated in any violation of the civil service statutes, §486-17a GC provides a ready means for their removal from their positions. It does not appear in this case that either has even been charged with misconduct or with participation in the misconduct of another, either directly or indirectly, though they benefited from the questionable action of the representative of the respondents, or with having any connection whatever therewith, except to be made the innocent victim of such action."

Again, page 180:

"An incorrect certification undoubtedly may be corrected, but this correction cannot be employed to remove employees who theretofore had been appointed pursuant to such certification and who, through satisfactory service for the required period, had acquired a status of members of the classified service of the state. Being in the classified service they may not be summarily dismissed."

Again, page 181:

"If it be assumed that fraud would vitiate the original certification and warrant the recission of the appointment of any one selected from that list, it must be observed that no finding of fraud was announced, either by the Civil Service Commission or by the officers making the appointment."

There is sound reason for the protective features, to the public as employer and to the employee, of the statutes governing the selection of civil servants and their security in their positions after appointment or promotion. The entire process of selection and promotion is aimed at securing to the public service citizens of competence, character and integrity and, in return, and as an inducement to such persons to enter the service at generally less pay than offered in a normal period by private sources, tenure in office is assured upon appointment and promotion.

The process leading to appointment and promotion is a deliberate one, involving many steps, covering, of necessity, days or weeks of time, and affording opportunity to assert claims, if any, or irregularities and errors along the way. In the case of original appointment the public, by the statutory provisions, says to the applicant that if he can qualify all along the line and he is finally appointed he will be entitled to security in his employment or office during good behavior and may only be removed as provided in §486-17a GC. In a case involving promotion the public says to the employee that he must qualify all along the line and he must subject himself to a final probationary period in the new office—not exceeding three months. If he is found ineffective within the three month period, he has not lost his tenure. The most that can happen to him is a finding that he should not be promoted.

If a point when security attaches were not provided there would, in fact, be no security. The statutes establish a definite policy and say, in effect, that upon appointment or promotion being reached (subject to probate in case of promotion) all details involved in the process leading to the appointment or promotion are left behind and are not to be reopened. Human agencies are not infallible and in matters and details such as are involved in the preliminaries leading to appointment or promotion to or within the public service, it is rather safe to say that there is never certainty that errors have not crept in. If there existed no bar to the claiming of errors no employee would have tenure. The case at bar is a classic example of what could happen. The plaintiff, Kluth, was promoted, and entered upon the performance of his duties and the enjoyment of his promoted status. Several months later he is informed that it has been found that some blundering developed in the giving of the examination to determine who should be promoted, and while it is not claimed that he was a party to it, or knew anything about it at all, and while he was certified and promoted in good faith, he, nevertheless, is not a Lieutenant any more.

If that same situation developed in the case of original appointment a person who supposed, and whom others supposed, was a public servant with tenure would find himself not to be a public servant at all. It must be clear that the law invites no such confusion or demoralizing situations and that its terms are carefully drawn to make impossible such situations. This court expresses no opinion on what would have been the effect of a discovery of fraud in the preliminary proceedings because there was no finding of fraud in Cause No. 608,225 and it does not appear that there has at any time been made a claim that Kluth was a party to any fraud or irregularity of any kind. On this point it is again proper to mention the statement at page 181 of **State, ex rel., Byrd, et al., v. Sherwood, 140 Oh St., 173, 23 O. O. 403, supra.**

Able counsel for Patton has urged upon the court some authorities cited in his brief, and which he claims support his contentions in this cause. They have been examined and found not to be similar in their facts, and therefore not to be decisive or particularly helpful. One or two of them will be mentioned to illustrate why the court does not deem them decisive or helpful. One or two of them will be mentioned to illustrate why the court does not deem them decisive or helpful.

**O. Jur., Vol. 19, page 443:**

"The rule is universally well settled that fraud is one of the grounds upon which equity will grant relief. Though fraud is ever assuming new forms equitable principles are so capable of valid applications as to be able to furnish relief against cheats of the newest inventions."

There is no doubt whatever about the accuracy of that statement but as already stated no fraud was found or declared in Cause No. 608,225, in which Patton was the plaintiff and in which he could have proved it if fraud there was. There is not even a claim that Kluth was a party to either irregularity or error. If there was even a suspicion that he had been a party to any irregularity it is rather certain that he would have been made a party. We are not concerned with fraud here.

23 N. Y. S. (2nd) 150, 153:

"We think that the provisions of the rule of commission with respect to permanency and the Civil Service Law with

respect to notice of changes apply only to those who have been legally appointed, and not to those who have secured appointment through fraud such as was practiced here."

Again we have an actual finding of fraud by those interested. Not so in the case at bar.

Pape v. Kern, 27 N. Y. S. (2nd) 379, 381.

The court makes no comment on this case for the reason that the citation is not correct. The case of Pape v. Kern is not reported in 27 N. Y. S. (2d.)

Ptacek v. The People, etc., 194 Ill. 125:

This case involves the construction of involved statutes of the State of Illinois, as well as rules of the Civil Service Commission. The weakness of the complainant's case was not based on mere error or irregular procedure, but on the fact that an examination under which he claimed rights was **not even authorized by law**. The situation had no similarity at all to the one in the case at bar.

Passing now from the citations of authorities in foreign jurisdictions, we come to those of our own state:

**State ex rel., Kook v. Civil Service Commission, 26 Abs. 36:**

The issue in that case was not the issue in the case at bar. A temporary or provisional appointment had been made to the police force. The statute provided that such an appointment might be made, but not for a period beyond ninety days. It definitely provided that upon such an appointment being made the Civil Service Commission was to call for a competitive examination of candidates for the position. The Civil Service Commission did not call such an examination and the provisional appointee held over beyond the ninety day period when an attempt was made to have him removed. The court held that he could not now be removed because no person had stirred himself to have the requirements of law complied with within the ninety day period. The court, at page 38, used the language quoted by counsel as follows:

"My finding in regard to the law in that respect is that the Civil Service Commission or any interested citizen or applicant had a period of ninety days in which to come in and ask the Civil Service Commission to act, or on their own responsibility could have have acted within ninety days."

No fraud was involved, but laches were involved. It should be made clear that the 90 day period in this case is NOT the 90 day period involved as the probationary period of Kluth's Lieutenancy. See §486-14 GC. The Kook case is very in-

teresting as indicating that even a provisional appointment free from fraud can ripen into a permanent appointment.

**State ex rel., Swartley v. Kalina, 46 Oh Ap 19:**

This case seems far from supporting the contentions of Patton in the case at bar. Laches were involved, but it is a case in which it is clear that a person with inferior right was put to work over one having a priority. Having been dilatory in seeking his remedy, he was denied a remedy, and thereby lost his priority right.

**State ex rel., v. Patterson, 93 Oh St, 25:**

Counsel has quoted the last paragraph of the opinion—page 36—and relies chiefly on this statement:

"Such an order, in many cases, may affect many persons. But it is certainly unnecessary to make such persons parties to the proceeding."

That is undoubtedly true, and the cause in which the statement was made was very far indeed from the case at bar. Only public bodies were involved, and the action was one to compel one public body (the County Budget Commission) to perform its statutory duty relating to the adjustment of budget estimates of the various taxing authorities. It is claimed that each taxing authority should be made a party, and that failure to do so resulted in a defect of parties defendant. No vested or fixed rights of any person was involved. The court held that the Budget Commission was clothed with a discretion to exercise and that such discretion could not be controlled in any event and dismissed the petition on the ground that it did not state a cause of action. The court never reached the question of parties, but as a closing word mentioned what was claimed. It certainly did not assert that vested rights of an individual can be litigated to his injury in his absence.

Based upon what has here been indicated and stated, it follows that the motion of the plaintiff will be and it is hereby granted, and the motion of the defendant Martin F. Patton will be and it is hereby overruled. An order may be drawn herein finding that the defendant Martin F. Patton is without rights in the premises and that the plaintiff Richard Kluth became a duly appointed Lieutenant of Police of said city of Rocky River, Ohio, on August 16, 1949, and that he is entitled to hold said office subject only to dismissal or demotion under the provisions of §486-17a GC, and restraining all other defendants herein from interfering with him in his enjoyment of said office excepting under the provisions of law.

No order will be made herein against any of the defendants other than as already indicated, for the reason that under the holding in **140 Oh St, 173, 23 O. O. 403**, infra, the city officials may correct their records and ratings without affecting the rights of plaintiff, and they will undoubtedly do so. Exception will be noted and amount of bond for appeal may be agreed upon by counsel and made a part of the entry herein.