**KLUTH, Plaintiff-Appellee, v. ANDRUS et, Defendant-Appellees, PATTON, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22022.   Decided July 23, 1951.

Neil W. McGill, Ralph L. Bailey, Cleveland, for plaintiff-appellee.

Emery C. Smith, Cleveland, for defendants-appellees.

George J. McMonagle, Cleveland, for defendant-appellant.

## OPINION

By THOMPSON, J:

This case came to this court on appeal on law by defendant-appellant, Patton, from a judgment of the Common Pleas Court granting a permanent injunction to plaintiff Kluth in accordance with the prayer of his petition. Defendants are the Director of Public Safety of Rocky River, Ohio, the members of the Civil Service Commission of that city and the intervening defendant, Martin F. Patton.

The facts admitted by the pleadings disclose that under date of June 23, 1949, plaintiff Kluth and defendant Patton, being then Sergeants of Police, took a promotional civil service examination given by the City of Rocky River for ap-

pointment as Lieutenant of Police; that on August 16, 1949, plaintiff, having been certified as receiving the highest rating in said examination, was appointed Lieutenant; that subsequently, on October 31, 1949, the defendant Patton, filed an action in the Common Pleas Court of Cuyahoga County, being cause No. 608225, against the Civil Service Commission of Rocky River and other city officials, as defendants, claiming he had not been properly graded nor given proper credits in his examination by the said Civil Service Commission; that after hearing, the Common Pleas Court on February 13, 1950, in said action between Patton and the Civil Service Commission, ordered the latter to make up the eligible list for the position of Lieutenant, either by re-grading the examination previously given under date of June 23, 1949, excluding certain performance record portions of the test, or to make up such eligible list by a further examination. The court, at the same time, issued an order to the Civil Service Commission to vacate the appointment of plaintiff Kluth as Lieutenant, although Kluth had not been made a party to the action. The Commission complied by vacating the appointment and restoring Kluth to his former position of Sergeant.

Subsequently, on March 27, 1950, pursuant to said court order, the Civil Service Commission of Rocky River gave a new examination in accordance with the second alternative offered by the trial court and Kluth, plaintiff herein, took the examination under protest, and defendant herein Patton, took the examination at the same time. On April 28, 1950, plaintiff Kluth was notified that defendant Patton rated first in the examination taken the previous month. Plaintiff thereupon, on May 2, 1950, filed the present action, praying that a temporary restraining order be issued, and that upon final hearing a permanent injunction be granted, restraining defendant, the Safety Director of Rocky River, from removing plaintiff and from appointing defendant Patton as Lieutenant and further praying that a mandatory injunction be granted, ordering the Civil Service Commission to withdraw its certification of Patton for the reason that no vacancy existed in said position, and for the further reason that the examination of March 27, 1950, was illegal and void.

The defendant, Patton, filed an amended answer in which he admitted that he and plaintiff Kluth, took the civil service promotional examination on June 23, 1949, and claimed that he was fraudulently graded lower than plaintiff Kluth, by the then Civil Service Commission. He also set forth that he had filed a mandamus action (Cause No. 608225) in which he asserted that he had named all necessary parties defend-

ant. He further set forth the order of the Common Pleas Court in the action referred to, vacating the appointment of plaintiff and ordering the Civil Service Commission to re-grade its previous examination of June 23, 1949, by exclud-ing certain so-called performance records or to grant a new examination

Plaintiff's reply denied that all necessary parties were ex-cluded in defendant's previous mandamus action, the fact being that Kluth had, at no time, been made a party to said action.

Plaintiff's reply asserted that in the examination of March 27, 1950, defendant Patton appeared to receive the highest grade but that plaintiff was not given proper credits and ratings. Plaintiff further asserted that he was then, and had been since August 16, 1949, the holder of the position of Lieutenant of Police in the City of Rocky River.

Defendants, members of the Civil Service Commission, filed an answer stating they had taken office as members of such Commission in 1950 and had, therefore, not participated in the giving of the promotional examination in 1949; they as-serted that they gave the examination in March, 1950, pur-suant to the court order; asserted that both plaintiff and defendant Patton, as a result of said examination, claimed the right to be certified for the position of Lieutenant and further prayed the determination of the court as to which of the parties, Kluth or Patton, was entitled to be certified to the appointment of Lieutenant of Police of Rocky River, Ohio.

The matter came on for hearing in the trial court and at the conclusion of the opening statements of counsel for the par-ties, plaintiff moved for a finding and judgment in his favor on the pleadings and opening statements of counsel. De-fendant Patton made a similar motion for a finding and judg-ment in his favor.

The trial court granted plaintiff's motion. The opinion of the trial court, rendered on July 27, 1950 (**Kluth v. Andrus et al**), is published in **58 Abs 230** and **42 O. O., p. 406**, and a reference thereto is made for a more detailed statement of the facts in this case. In this court briefs were filed in behalf of the various parties and also a brief amicus curiae of Dug-gan, Chief of the Fire Department of the City of Rocky River, Ohio.

The question presented in this case is the interpretation of certain civil service provisions of the Ohio statutes, and par-ticularly the question of the rights obtained by a member of the police department, of the classified civil service, who has secured an appointment under §486-13 GC, and who has

served meritoriously for longer than the three-month probationary period specified in §486-13 GC. More precisely, the question is whether a member of the police department in the classified civil service, who has served the required probationary period of three months in an office to which he had been appointed as result of a promotional competitive examination, can be removed therefrom for any reason other than cause as provided in §486-17(a) and §486-17 (b) GC.

In this inquiry, the pertinent facts disclose that plaintiff Kluth was appointed Lieutenant of Police under date of August 16, 1949, as the result of a promotional examination, and that he held this position at least until the court order of February 13, 1950, and that the court order vacating his position was based on no claim nor charge of fraud, nor any other misconduct on his part, but solely because of a claimed incorrect grading by the Civil Service Commission. It is submitted in behalf of plaintiff that, having served more than the three-month probationary period, he acquired "tenure" under §486-17(a) GC, and that he can be removed only under and by virtue of that section.

It becomes important, therefore, to examine the precise language of the two sections referred to, to the extent applicable to this case.

Sec. 486-13 GC, with reference to appointments under the classified civil service provides in part, as follows:

"All original and promotional appointments shall be for a probationary period of not to exceed three months to be fixed by the rules of the commission, and no appointment or promotion shall be deemed finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the appointing officer shall transmit to the commission a record of the employee's service, and if such service is unsatisfactory, the employee may, with the approval of the commission, be removed or reduced without restriction; but dismissal or reduction may be made during such period as is provided for in §486-17 and 486-17a GC. * * *"

Sec. 486-17 GC, forbidding reductions, lay-offs and suspensions for religious or political reasons, does not here concern us. Neither does §486-17b GC, applicable to reductions in case of lack of funds.

Sec. 486-17a GC provides as follows:

"The tenure of every officer, employe or subordinate in the classified service of the state, the counties, cities and city school districts thereof, holding a position under the provisions of this act, shall be during good behavior and efficient

service; but any such officer, employe or subordinate may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or non-feasance in office.

In all cases of removal the appointing authority shall furnish such employe or subordinate with a copy of the order of removal and his reasons for the same, and give such officer, employe or subordinate a reasonable time in which to make and file an explanation. Such order with the explanation, if any, of the employe or subordinate shall be filed with the commission. Any such employe or subordinate so removed may appeal from the decision or order of such appointing authority to the state or municipal commission, as the case may be, within ten days from and after the date of such removal, in which event the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm or modify the judgment of the appointing authority, and the commission's decision shall be final; provided, however, that in the case of the removal of the chief of police or chief of the fire department or any member of the police or fire departments of a municipality, an appeal may be had from the decision of the municipal commission to the court of common pleas of the county in which such municipality is situated to determine the sufficiency of the cause of removal. Such appeal shall be taken within ten days from the finding of the commission."

In addition to the foregoing sections, §486-15a GC, dealing with promotions in the civil service, in the case of patrolmen and firemen is to be kept in mind. The portion of that section significant for present purposes is as follows:

"No position above the grade or rank of patrolman or regular fireman in the police or fire department shall be filled by original appointment. Vacancies in positions above the rank or grade of patrolman or regular fireman in a police or fire department shall be filled by promotion from among persons holding positions in a grade or rank lower than the position to be filled. Appointments to such vacancies shall be limited to members of the respective departments. No position above the grade or rank of patrolman or regular fireman in a police or fire department shall be filled by any person unless he shall have first passed a competitive promotional examination. * * *"

In the light of the sections quoted, had plaintiff Kluth, by service of more than three months in his position, acquired tenure? We believe that he had acquired such tenure and that he could, therefore, be discharged only for cause and under procedure provided by §486-17a or §486-17b GC. We find no action taken under those sections on the part of the city authorities in this case. We realize the implications in this holding and have borne in mind, in reaching it, the fact that the vacation of Kluth's appointment was pursuant to what the municipal civil service commission believed to be a valid order. Recognizing that instances may arise whereby a civil service commission would be required under court order to vacate an appointment, and whereunder another court would be required on the basis of res adjudicata to accept such ruling, we do not find that Patton's original action resulted in an order of such nature. The defendant Patton argued forcefully in this court that the decision in his case (No. 608225) required such action by the civil service commission and acceptance of it by the trial court, but in that suit Kluth was not a party and Kluth's status could not be affected by a case in which he was not made a party nor given opportunity to be heard. The findings of the trial court in the Patton case could not be res adjudicata as to Kluth or others not parties to that action. This principle appears to us so fundamental and so thoroughly recognized that we merely cite the following authorities:

"Judgments" 23 O. Jur., p. 836, Sec. 527; Auglaize Box Board Co. v. Hinton, 100 Oh St 505.

We believe it, therefore, clear that in the present action in which Kluth sought an adjudication of his status, and an assertion of his rights, the trial court was not only not bound by the previous suit on the part of Patton, but properly inquired into the circumstances of that action, since counsel freely submitted to the trial court in this case the files in cause No. 608225. Under the facts of the pending case, Kluth not having been a party to the previous action, and there being no claim that he was a participant in any fraud in connection with his promotional civil service examination, his rights could not be adjudicated by a ruling in a case in which he was not represented; furthermore, he had acquired a vested right under the civil service sections of the Ohio Code of which he could not be deprived, except in a manner provided by law. Having held a promotional position for more than the probationary period of three months his occupancy had ripened into a special right, recognized by statute, a right not to be taken away except under procedure and for cause specified in the statute (§486-17a).

In the case of **State ex rel Wolcott v. Celebreeze, 141 Oh St 627,** the Ohio Supreme Court had before it the case of a Captain in the police force whose name was first on the eligible list for promotion to the position of Deputy Inspector, and he brought an action in mandamus to compel respondent, Director of Safety of the City of Cleveland, to promote him to an alleged vacancy. In deciding that case, and in interpreting the civil service statutes involved, particularly §486-17b and 486-15a GC, Chief Justice Weygandt, in rendering the opinion of the Court, declared:

"The respondent comments upon what he considers to be the unwisdom of the provisions of these statutes. However, that is not a judicial problem but rather a matter of legislative policy resting in the discretion of the General Assembly."

In deciding the present case, this Court similarly points out that there is here no question of policy to decide, but an interpretation, in the first instance, of statutes expressing the legislative purpose of the people of Ohio.

There was early recognition of the need for civil service laws in Ohio. As a result of the constitutional convention of 1912, one of the amendments to the **Ohio Constitution** adopted was **Art. XV, Sec. 10,** as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

In conformity with that provision of the **Ohio Constitution** the first general civil service law in Ohio was enacted in 1913 **(103 O. L. 698);** the present act, §486-1 to **486-31, inclusive, GC,** dates from 1915, except for various amendments since that time.

In **Curtis v. State, 108 Oh St 292,** decided in 1923, the Ohio Supreme Court declared the purpose of the act to be as follows:

"The fundamental purpose of civil service laws and rules is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations, and to safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations * * *." (4th paragraph of syllabus, first sentence.)

See similarly, **State ex rel Buckman v. Munson, 141 Oh St 319 Syllabus 1.**

The sections we have for consideration in the instant case (§§486-13, 486-15(a) and 486-17a) have been in effect sub-stantially in their present form since 1931. Many Ohio cases have discussed the meaning of these sections as they apply to and adjudicate the status of civil service employees com-prising two categories: (One) employees appointed or pro-moted from eligible lists, dismissed during the probationary period of three months, and (Two) employees similarly ap-pointed or promoted and discharged after the appointee has satisfactorily served his probationary period. Because of the importance of the question before us, and our realization of the possible effect of the present decision on other cases, we shall refer to each of the Ohio cases heretofore decided which have aided us in reaching the conclusions we here express.

The first case to be noted is **State ex rel Byrd v. Sherwood, 140 Oh St 173.** We content ourselves at this point with a quotation of the syllabus but shall return to a more detailed examination of this leading case in connection with the claims of fraud raised by the defendant Patton. The syllabus of this case is as follows:

"1. The removal of one regularly appointed to a position in the classified service from a list of persons whose names had been duly certified to the appointing officer in accord-ance with the provisions of §486-13 GC, and who had ren-dered satisfactory service for more than ninety days is gov-erned by the provisions of §486-17a GC.

"2. Though an incorrect certification of an eligible list from which appointments to positions in the classified service are to be made may be subsequently corrected, such change does not authorize the peremptory dismissal of an employee who prior thereto had been appointed pursuant to such certifica-tion and served satisfactorily longer than the probationary period."

We believe the facts in the foregoing case cause it to be of particular importance in deciding the present case.

We also call attention to the case of **State ex rel Hoornstra v. Atkinson, 136 Oh St 569,** decided in 1940. In this case an original mandamus action was brought by relatrix to compel the respondent to restore her to her former position of senior interviewer in the classified service of the Ohio Bureau of Unemployment Compensation, she not having been laid off or suspended for cause under the provisions of §486-17a GC. The facts established that relatrix successfully passed a com-petitive civil service examination in the classified service. On Dec. 30, 1938, the Civil Service Commission certified her

name to the Unemployment Compensation Commission as eligible for appointment. On Dec. 31, 1938, the Unemployment Compensation Commission appointed her to the position in question, to become effective on the day she should report to the manager of the Cleveland office. Actually, she began work on Dec. 27, 1938 and continued to hold the position until May 10, 1939 when she was discharged. Through some apparent error, no report of her appointment was made to the Civil Service Commission as provided by §486-13 GC, until Feb. 10, 1939. The question before the court was whether her appointment became effective on December 31, 1938 or on February 10, 1939, as shown in the records of the Civil Service Commission. It was the claim of relatrix that her position became effective December 31, 1938 while the respondent claimed her appointment became effective February 10, 1939, and that her discharge on May 10, 1939, was within the probationary period of three months specified by §486-13 GC. The question before the Supreme Court was whether, since the report of her appointment as provided by §486-13 GC, was not made to the Civil Service Commission until Feb. 10, 1939, her appointment became effective only as of said date. The court held that her appointment became effective from the date of appointment and not from the date of the report of such appointment made by the appointing authority to the Civil Service Commission. Having determined that point, the Supreme Court allowed the writ as prayed for by relatrix, ending its opinion with the following positive statement:

"In the opinion of the court, the appointment of relatrix became effective as of December 31, 1938, and since her probationary period of employment had expired before May 10, 1939 she could not then be removed except for cause. Her discharge was, therefore, wrongful."

It will be noted that the foregoing language clearly holds that the relatrix, having served for more than the probationary period of three months could not thereafter be removed except for cause. It also appears from the facts that when the court referred to removal for cause, it meant cause under §486-17a GC.

A subsequent decision by the Ohio Supreme Court is equally persuasive on this point. In **State ex rel Daly v. City of Toledo, 142 Oh St 123**, relator brought an original action in the Supreme Court of Ohio seeking a writ of mandamus to compel the city officials to restore him to his position as deputy chief of the Division of Fire for the City of Toledo. Relator had been appointed a regular fireman in the classified service in 1909 and, from time to time during his continuous service, he had been promoted within the department. On

Nov. 16, 1938, he was promoted to the office of deputy chief. His original appointment and all promotions were permanent appointments. He held his office of deputy chief until May 9, 1943. At that time, which was his 65th birthday, he was notified by the Director of Public Safety that he would be retired from duty in view of a city ordinance, passed in 1935, providing that no member of the police or fire departments of the City of Toledo should remain in service after attaining the age of sixty-five years. Note, therefore, that under the facts of this case, relator was discharged because of a city ordinance and not for any of the causes specified in §486-17a GC. The Supreme Court of Ohio declared that relator was entitled to a writ of mandamus, stating that since he was in the classified civil service he was entitled to. the full protection and benefit of the State civil service laws and that since under §486-17a GC, he was entitled to tenure during good behavior, the municipal ordinance requiring retirement at sixty-five years was invalid and unenforceable.

In its opinion, the Court quoted §486-17a GC of the Civil Service Code and then discussed the meaning of the word "tenure." In its opinion the court declared:

"The word 'tenure' and the word 'term' are not synonymous although frequently so used. 'Tenure' has a more extended meaning than 'term.' Tenure is the right to hold office for an indefinite time.

"Term denotes a period of time within fixed limits. It must be presumed that the General Assembly used the word **tenure** in §486-17a GC, deliberately and not inadvertently. Such construction is required in view of the further language employed:

" 'shall be during good behavior and efficient service.'

"No one could seriously contend that 'during good behavior and efficient service' does not denote an indefinite period of time.

"The General Assembly having fixed the tenure of office of all persons in the classified civil service of the state, counties, cities and city school districts, a member of the fire department in such service, therefore, is protected in his tenure and can be removed from service only as provided by the statute. The General Assembly having determined and specified the causes for removal, that action amounts to a prohibition of a removal for a different cause. Mechem on Public Offices and Officers, 285, Sec. 450 and cases cited."

Various decisions of the Courts of Appeals of Ohio have also pointed out the distinction between the right of discharge of a civil service employee during the probationary period of three months and the status acquired after termination of the three month probationary period. We call attention to **State ex rel**

**Noble v. Atkinson, 31 Abs 576,** decided by the Court of Appeals for the 2nd District in 1940. This was an action in mandamus in the Court of Appeals, by a dismissed classified civil service appointee, to compel restoration to his position with the Bureau of Unemployment Compensation. The relator claimed he had been illegally removed after he had served his probationary period of three months. The writ was allowed because the court found from the facts that relator had been appointed on Dec. 31, 1938 and was discharged on May 10, 1939, after he had acquired tenure. The holding of the court is thus stated in the syllabus:

"Where the Bureau of Unemployment Compensation by formal resolution names a person on a regular certified list as a regular probationary appointee on a certain date, and any investigation by the Bureau or the Civil Service Commission would disclose such appointment, the probationary period dates from the day such appointment is made, the validity thereof is not affected by the failure of the Bureau to make proper report to the Commission as required by §486-13 GC, and a later certified list and appointment, not having such indicia of regularity, and authority, will not be given effect, so that the appointee, dismissed after the ninetieth day from the prior appointment without justification, is entitled to a writ of mandamus compelling his restoration to his position in the classified service."

Another case in which §486-13 and 486-17a GC are discussed, is **State ex rel Crabtree v. Eichelberger, 76 Oh Ap 108,** a decision by the Court of Appeals for the 2nd District in 1945. This was an original action in mandamus in the Court of Appeals by relator seeking restoration of his position as Captain in the Fire Department of the City of Dayton. Relator had been promoted under an eligible civil service list in August, 1943, and he was notified of his reduction in rank from Captain to Lieutenant effective Feb. 19, 1944. He was informed by letter that his services as Captain "had not measured up to the standard required for that position" and that he was therefore reduced to his rank of Lieutenant. Relator claimed that the charges were not definite and certain and that they did not come within the requirements of the General Code or of the Charter of the City of Dayton. The respondent in his answer contended under the provisions of Sec. 99 of the Charter of the City of Dayton, no specific charges were required, that section providing that a promotion should not be deemed complete until a probationary period of six months had elapsed. The Court of Appeals pointed out that the section of the Charter of the City of Dayton differed from §486-13 GC, and

that the state law therefore prevailed. Demotion was held illegal since more than three months had elapsed since relator's appointment and no specific charges had been preferred as required by §486-17 GC.

In the case of Zimbelman v. Atkinson, 54 Abs 47 (Court of Appeals, 2nd District, 1948), it was held that the mere failure of the Civil Service Commission to make proper formal entry of an appointment, otherwise regularly made and certified to, would not affect the validity of such appointment. The court declared that plaintiff having attained the status of a regular civil service appointee by service of more than the three month probationary period, she was entitled to retain her position during good behavior and efficient service and could only be separated from her position in the manner prescribed by statute.

The most recent decision in Ohio is State ex rel Kelley v. Hill, 99 N. E. Rep (2d) 1, a decision of the Court of Appeals of the 2nd District, reported in Northeastern Reporter Advance Sheets under date of June 20, 1951. The syllabus of the court is as follows:

"1. The provision contained in §486-13 GC that an original appointment shall be for a probationary period not to exceed three months, is for the benefit of the appointing power.

"2. Where, following appointment, the appointee serves for a period far exceeding three months probationary period and the appointing power fails to make any report to the civil service commission indicating that appointee's services are unsatisfactory, it is presumed that the services of appointee are satisfactory and the appointment becomes permanent."

The cases referred to, decided by the Ohio Supreme Court and four Courts of Appeals in recent years, reinforce our judgment that §486-13 and §486-17a GC, construed together, clearly provide that any appointment or promotion in the classified civil service, after expiration of the three month probationary period, confers tenure on the employee of a nature such that he can thereafter be discharged or demoted only for the cause mentioned, and in the manner provided, by the civil service statutes. It follows from this conclusion that Kluth, having served more than the three months probationary period contemplated by the statute, can be discharged or demoted only for the causes provided in §486-17a GC, and under the procedure outlined. No such cause has been shown as basis for demotion in this case and the statutory procedure for hearing of any charges against him were not followed by the appointing authority or by the civil service commission of the municipality.

The only question remaining, therefore, is whether any allegations of the pleadings, or opening statements of counsel before the trial judge, set forth any such compelling or overriding combination of circumstances as to call for the ignoring of the plain language of the statute. The trial court indicated in its opinion that it gave careful attention to the charges of fraud set forth in the amended answer of the intervening defendant, Patton, it being alleged therein, "that all members of the civil service commission, as then constituted, fraudulently lowered his (Patton's) grade and increased the grade of the plaintiff in this action so as to make it appear that this defendant did not receivve the highest grade." Fraud by the Civil Service Commission is also alleged by Patton's counsel in his opening statement before the trial judge and this is incorporated in the bill of exceptions so that we have it before us. The fraud claim referred to occurs at pages 25 and 26 of the bill of exceptions:

"The evidence will show that by a proper grading of the various questions that were put in there, Mr. Kluth did not receive 100%; that he gave incorrect answers that were graded as correct and Mr. Patton gave correct answers that were graded incorrect; that this was done deliberately so as to give Mr. Patton a lower grade than he was entitled to, and to build up Mr. Kluth and cut down Patton. We allege that this was done fraudulently; that the examination and the office were stolen from Mr. Patton."
                        * * *

"Mr. Patton was ahead by nine-tenths of a point. Then the 85 that had been given to Mr. Kluth for performance record was deliberately and fraudulently raised to 89, in order to steal the examination and office from Mr. Patton."

The trial court in its opinion, in discussing the charges of fraud, also referred to the fact that counsel for the parties submitted to him the files in Cause No. 608225 (the Patton case).

Parenthetically, it should be added that although no part of that file, and no copies of the pleadings in the Patton case, were incorporated in the bill of exceptions, and it might, therefore, be questioned as to our authority to examine into the case, were it not for the trial court's action based on consent of counsel, we have in the light of that action and with that consent, taken note that in the early stages of the Patton case the trial court granted an alternative writ of mandamus to show cause, returnable on Nov. 14th. But the record does not disclose that the trial court at that time issued any temporary restraining order or took any other action to interrupt the probationary period of tenure within

the three months mentioned in §486-13 GC. The only entry made as the result of the hearing on November 14, was one advancing the case for early trial.

Defendant Patton's amended answer sets forth what appears to be the pertinent part of the trial court's decree in the Patton case. Despite the allegations of fraud made by Patton in his amended answer in the instant case, with reference to the grading of the original civil service examination, it is to be observed that neither Patton nor any other party claims any participation by Kluth in any alleged incorrect, illegal or fraudulent grading. That portion of the opinion of the trial judge in the Patton case which has been quoted in Patton's amended answer herein, reveals no finding of fraud on the part of the Commission or on the part of any other city official of Rocky River. Where a motion for a finding and judgment based on pleadings and opening statements of counsel is joined in by both sides, as in this case, the function of the trial court, in passing on the motions, is to assume the truth of all of the facts stated in order to sustain the principle that every litigant is entitled to his day in court. **K. & S. Realty Co. v. Rosen, 47 Abs 316,** decided by the Court of Appeals of this District, in 1946. See also the citation and comment upon this case in **39 O. Jur. "Trial" Cumulative Supp., Pgs. 884, 886, Secs. 226, 227.**

We are therefore called upon to assume fraud on the part of the Civil Service Commission, for the purpose of determining whether the trial court acted properly in granting plaintiff's motion for a directed verdict at the close of the opening statements of counsel and in overruling the motion of defendant for a finding and judgment.

Assuming such fraud by the municipal civil service commission in the alleged incorrect grading of the original examination, we have heretofore pointed out that the trial court had access to the pleadings in the Patton case. The trial court, in its well-reasoned opinion, declares as follows:

"The findings in said cause No. 608225 were to the effect that the civil service commission had erred in one section of the examination. There was no finding of fraud on the part of any person or body; there was no finding, nor is it even claimed that Kluth had anything whatever to do with the error or the proceedings beyond his entering the examination "

Although this finding of the trial court and the portion of the judgment in the Patton case (No. 608225) quoted in Patton's amended answer in the instant case, reveal no fraud on the part of the Civil Service Commission in the adjudica-

tion of the earlier case, we, none the less, do have the charges of fraud raised by defendant Patton in his amended answer in this case and the opening statement by his counsel charging fraud by the Civil Service Commission hereinabove quoted from the bill of exceptions (pages 25 and 26).

It might, with pertinence, be inquired as to whether Patton, having once previously chosen to litigate the question of fraud by the Civil Service Commission, and having presumptively obtained a judgment in which any finding of fraud was absent, is not bound by such judgment in a later case in which he and the Civil Service Commission are again parties and in which he seeks to adjudicate the same question, for the successor Civil Service Commissioners stand in the shoes of their predecessors. Be that as it may, what the trial court had to decide in this case, in view of the allegations of fraud in Patton's amended answer and in his counsel's opening statement to the court, was whether, granting fraud by the Commission, which might be proven if the case went to trial, would such fraud by the Commission vitiate the Kluth appointment, in the absence of participating fraud by the latter? We believe, with the trial court, that it would not and we base our conclusions on the language of the statutes and the Ohio cases we have discussed.

In this connection we have heretofore cited **State ex rel Byrd v. Sherwood, 140 Oh St 173.** That case involved facts very closely similar to the present case. In the Sherwood case, relator had obtained his appointment as investigator in the Division of Aid for the Aged as the result of a competitive examination which created an eligible list comprising 133 persons. The grades of relator in the examination caused him to be No. 129 on the list. Subsequently relator was notified of his appointment and he commenced work on August 1, 1941 performing his duties until Dec. 15, 1941. It subsequently appeared, after relator's appointment, that his appointment and those of 41 others on the civil service eligible list, were the result of waivers obtained from seventy-one individuals standing higher in the list than relator. Upon complaints filed with the State Civil Service Commission on Oct. 20, 1941, it developed that the waivers had been acquired by an agent for the appointing authority, presumably without its knowledge, who had contacted the various persons on the eligible list and persuaded 71 of them to execute waivers of their rights of priority. These waivers were procured by various forms of persuasion, including assurances of later favorable attitude and consideration by the appointing power and threats and misrepresentations. It being difficult to imagine a more

assiduous application of effort required than that of securing relinquishment of expectant rights by as many as 71 persons, it is obvious many forms of representation must have been made to the individuals in order to prevail on them to release their rights. The investigation by the State Civil Service Commission having revealed this improper action, the Commission on Nov. 15, 1941, directed that all appointments made from the previous certification be cancelled and on Nov. 18, 1941, relator was notified of the rescission of the certification and of his and all appointments previously made thereunder. Relator thereupon filed an original action in mandamus in the Supreme Court of Ohio and recited that he had served more than the ninety-day probationary period, claimed that he had thereby become vested with tenure during good behavior and that he could be removed only in the manner provided by statute, and for some cause therein specified. The Supreme Court, in granting the writ, held that relator had acquired tenure by rendering satisfactory service for more than the three-month probationary period provided in §486-13 GC. In so holding, the Supreme Court declared that no fraud was shown on the part of relator. In its opinion on this subject, the Court declared:

"If the relator or relatrix had sponsored or participated in any violation of the civil service statutes, §486-17a GC, provides a ready means for their removal from their positions. It does not appear in this case that either has even been charged with misconduct or with participation in the misconduct of another, either directly or indirectly, though they benefited from the questionable action of the representative of the respondents, or with having any connection whatever therewith, except to be made the innocent victim of such action."

The court further declared:

"The original list certified was concededly a list of persons, all of whom were then eligible for appointment. The names of the relator and relatrix were on such list, and their appointment by the respondents was thereby authorized and accordingly made. **Bd. of Trustees of Madison County Children's Home v. State ex rel Laird, 128 Oh St 560, 192 N. E. 877.** An incorrect certification undoubtedly may be corrected, but this correction cannot be employed to remove employees who theretofore had been appointed pursuant to such certification, and who, through satisfactory service for the required period, had acquired a status of members of the classified service of the state. Being in the classified service, they may not be summarily dismissed. **State ex rel Slovensky v. Taylor, Dir.**

**135 Oh St 601,** 21 N. E. (2d) 990. To proceed against these persons, the provisions of §486-17a GC, must be followed. If those provisions are deemed inadequate, the remedy is by legislative amendment and not by administrative or even judicial amendment. If it be assumed that fraud would vitiate the original certification and warrant the rescission of the appointment of anyone selected from that list, it must be observed that no finding of fraud was announced, either by the Civil Service Commission or by the officers making the appointment."

In comparing the Sherwood case with the present case, note that in the instant case the original court action by Patton was commenced before the termination of the three-month probationary period of Kluth, and in the Sherwood case the irregularity or fraud in connection with the procurement of waivers culminated in charges filed with the State Civil Service Commission prior to expiration of the three-month probationary period of relator. The publicity in either case was notice to a diligent appointing authority that the statutory probationary period had not expired but that "time was running," provided affirmative action to remove the probationary appointee was deemed advisable. In neither case was action taken and we·may presume the appointing authority found no reason for action. It is not, however, the lack of agitation on the part of the appointing authority that causes us to point to similarities in the two cases; we are interested in observing that the Supreme Court of Ohio in the Sherwood case was not led to suggest, by any analogy to a statute of limitations, that objections taken during the three-month probationary period postponed or interrupted the running of the three-month probationary period. If effective affirmative action by a court during the three-month probationary period would interrupt the statute, the fact is that we do not have such action in this case, as we have previously pointed out.

Analysis of the Sherwood case and of the two paragraphs commenting on fraud, which we have quoted, makes it apparent that the Supreme Court had in mind two kinds of misconduct in the case of a civil service employee having acquired tenure and in which fraud might be involved; the first, covering misconduct vitiating the appointment when participated in by the employee, permitting removal for cause under §486-17a **GC**; the second, being fraud by the appointing authority. In the case of fraud of the latter kind, not participated in by the employee, §486-13 and §486-17a GC would apply to prevent his removal unless the courts read an exception into the plain language of the statute. This we are unwilling to do.

Our conclusion should appear in no degree surprising, if it be borne in mind that the prime principle of the civil Service Act is to provide tenure for persons having been appointed and having served the statutory probationary period. Thus acquiring "tenure," or permanent civil service status, such employees can be discharged only for causes to which they themselves may have contributed, and not because of the fluctuating ebb and flow of political fortunes. To declare otherwise would encourage unending assaults on the virtues of their predecessors by incoming administrations and re-examination and constant charges of fraud in connection with their appointments. The present case indicates the jeopardy in which all individuals in the permanent civil service would find themselves, in spite of statutory "tenure" if they could be readily displaced by findings or charges of illegal appointment by duly constituted successor authorities. Instead of offering inducements to an attractive and dignified career, civil service would become increasingly hazardous and uninviting.

We have examined all of the cases cited by counsel, and in reaching our conclusion we have contented ourselves with nothing less than a complete examination of the law relating to tenure of civil service employees in this and other jurisdictions. We have found no cases from other states which have aided our determination, and rather naturally so, since our problem is the correct interpretation of Ohio statutes. It would unduly prolong this opinion for us to distinguish various cases cited by counsel in their briefs which we have omitted to mention, believing them not in point. In this category we include **State ex rel Bigam v. Hainen, 150 Oh St 371.**

We should add one further comment. We do not consider that the present action constitutes a collateral attack on the judgment of the trial court in the Patton case, and, from the evidence before us, that case was undoubtedly correctly decided on the basis of the pleadings and facts there presented. It does not, however, adjudicate the rights of plaintiff in this case, whom we find entitled to the injunction prayed for.

The judgment of the trial court is affirmed. Exc. Order see journal.

SKEEL, PJ, HURD, J, concur.