NISWONGER ET AL., APPELLEES, *v.* CITY OF CINCINNATI, APPELLANT; ET AL., APPELLEES.

(No. 10418—Decided May 6, 1968.)

*Mr. Jerome Goldman* and *Mr. Douglas G. Cole,* for appellees.

*Mr. William A. McClain, Mr. Philip S. Olinger* and *Mr. Paul J. Gorman,* for appellant.

SHANNON, J. This comes to us as an appeal on questions of law in a matter in which the plaintiffs sought a declaratory judgment.

It is a class action brought by a detective on active duty and a retired detective of the Crime Bureau of the Division of Police of the city of Cincinnati against that city seeking a declaratory judgment that they and the defendants (other than Wichman, Sandman and Schrotel), who were or are detectives on the day shift in the crime bureau, were entitled to be paid for their one-half hour lunch period, amounting to two and one-half hours per week, from June 17, 1960, which is six years preceding the filing of their petition, to February 27, 1966, the date when their unpaid lunch periods were abolished and they were permitted to eat while on duty. They also seek individual judgments for such sums determined to be due each of them. They seek straight time pay from June 17, 1960, to June 17, 1964, and time and a half pay from June 17, 1964, to February 27, 1966. At the commencement of the trial they made a motion to include members of the vice squad in the action, which was granted by the trial court over the objection of the city. The case was tried to the court upon agreed stipulations and the evidence. The court granted the detectives all the relief prayed for, including interest at the rate of six per cent per annum on the respective amount which became due each week to each member of the class from ten days after the same became due until paid, and also indicated that a master commissioner would be appointed to determine what sum was due each member of the class.

The facts establish that prior to April 1, 1956, detectives working the day shift out of the crime bureau work-

ed five and one-half days per week. On the five full work days, they commenced work at 8 a. m. and left work at 5 p. m. During each of these five days they had an unpaid lunch period of one hour. They were paid for working forty-four hours per week.

On April 1, 1956, by resolution of council, the work week of all members of the police division was reduced to forty hours per week in order to promote better employee relations, morale and efficiency. As far as the detectives working the day shift out of the crime bureau were concerned, the directive of the resolution was carried out by eliminating the half day of the five and one-half day work week. On the same date the commander of the crime bureau, Henry Sandman, by authority invested in him, in an additional effort to improve the morale of the detectives working the day shift, reduced the unpaid hour lunch period to one-half hour and permitted them to leave work at 4:30 p. m. Therefore, on and after April 1, 1956, to February 27, 1966, the detectives working the day shift worked five days per week from 8 a. m. to 4:30 p. m., and during each of such days they had an unpaid one-half hour lunch period. They were paid for working forty hours every week. On February 27, 1966, a police specialist program commenced in the division of police and on that same date the unpaid one-half hour lunch period was eliminated and the detectives working the day shift out of the crime bureau were permitted to eat their lunch while on duty. At that same time, their work day was reduced to 8 a. m. to 4 p. m.

It is stipulated that all three shifts in other branches of the police division were set at eight hours from starting time to quitting time and included one-half hour during which the employee was permitted to eat, five days a week, a total of forty hours per week.

The first assignment of error of defendant city of Cincinnati, appellant herein, is that the judgment is contrary to law. The appellant presents this upon two grounds: first, it contends that the plaintiffs, appellees herein, brought the action upon the theory that an implied

contract existed between them and the city. We need not consider such contention beyond the statement that, to us, the resolution of the basic question in this controversy does not involve the application of law pertaining to implied contracts.

Secondly, the city contends that the unpaid lunch period involved was a condition of employment accepted by the plaintiffs.

The city's position in this regard might be tenable if all members of the detective force had been treated alike; however, the trial court found specifically that:

"Effective April 1, 1956, each work shift in the Police Division of the city of Cincinnati was made eight hours from starting time to quitting time, including one-half hour during which the employee was permitted to eat, for five days per week for a total of forty hours per week, except the day shift for the detectives in the crime bureau and the members of the vice squad, including the officer parties herein, each of whose day work shifts were from 8:00 a. m. to 4:30 p. m. during which shifts they were permitted one-half hour to eat, for five days per week, for a total of forty-two and one-half hours per week.

"All other shifts in the crime bureau, except the day shift, beginning April 1, 1956, extended to a total of only eight hours per day including one-half hour allowed for eating.

"Effective February 27, 1966, employees on the day shift of the crime bureau and the vice squad were placed on a shift beginning at 8:00 a. m. and ending at 4:00 p. m., including one-half hour for lunch time five days per week, the same as the day shift on which all other employees of the police division of the defendant city had been working since April 1, 1956. * * *"

Evidence adduced below not only warrants but, indeed, compels such findings of fact.

In addition, it is apparent that protests were made as early as 1960 concerning inequitable pay. The solicitor cites *Finlay* v. *Parent, Dir. of Finance* (No. 127958 Court of Common Pleas, Montgomery County, 1967, unreported), to

the effect that acquiescence of police personnel to a policy requiring them to report for duty fifteen minutes before commencement of their shift and to remain after completion thereof to report, constituted a waiver of all claims for overtime pay, as supportive of the city of Cincinnati's second argument.

The trial judge in the *Finlay case* recognized his position to be tenuous because he held that such waiver ended when the police "served notice to the world that their gratuities were at an end," the date of such announcement evidently being the day suit was filed.

Suffice for us to say, without further comment, that the *Finlay case* is not applicable to the case here at bar.

The plaintiffs did not—and the defendant city was, or should have been, aware that they did not—accept the unpaid lunch period as a condition of employment. Additionally, to say that one segment of a group protected by civil service legislation shall be compelled to accept what the group as a whole is not required to is repugnant to the very theory of such legislation.

In the case of *Curtis, Safety Dir., v. State, ex rel. Morgan,* 108 Ohio St. 292, the Supreme Court said in paragraph four of the syllabus.

"The fundamental purpose of civil service laws and rules is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations, and to safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations. * * *"

This pronouncement was echoed in *State, ex rel. Buckman, v. Munson, Dir.,* 141 Ohio St. 319, paragraph one of the syllabus, and in *Kluth v. Andrus,* 91 Ohio App. 1, at page 11.

This brings us to the heart of the controversy. Were the plaintiffs and the class they represent different from other detectives? Clearly, from the evidence, they were not. The common identity of all detectives was recognized by the

authorities when: "On February 26, 1966, the requirements previously imposed upon detectives working the day shift for the crime bureau having a shift from 8:00 a. m. to 4:30 p. m., five days per week, were changed. After February 26, 1966, the schedule of such detectives working the day shift out of the crime bureau was reduced to 8:00 a. m. to 4:00 p. m., including the time for lunch for which they were paid."

The ancillary to the query just answered is: Were the plaintiffs and the class they represent discriminated against?

Those manning the day shift for detectives in the crime bureau and the members of the vice squad had to be available for duty from 8 a. m. to 4:30 p. m. on a given day during the period pertinent to this controversy. All other shifts in the crime bureau were for eight hours per day, including one-half hour allowed for eating. Obviously, then, the plaintiffs and the class they represent were discriminated against.

The philosophy of civil service legislation is parity between the members of a class or group. The object is to prevent inequality of treatment for any reason whatsoever. The hypothesis is that individuals shall be rated by performance and merit rewarded; none shall be preferred within the group except as the result of standards applied indiscriminately. Therefore, we are convinced that the court below was correct in its judgment.

The only remaining questions relate to computation of the award to plaintiffs and the class they represent.

The right of a police officer to his salary grows out of statute, plus the ordinances enacted pursuant to such statutory authority. *Wright* v. *Lorain,* 70 Ohio App. 337.

Consequently, the trial court correctly held that plaintiffs' rights to be compensated for time worked were limited by the provisions of Section 2305.07 of the Revised Code, which read:

"Except as provided in Section 1302.98 of the Revised Code, *an action* upon a contract not in writing, express or implied, or *upon a liability created by statute* other than a

forfeiture or penalty, *shall be brought within six years* after the cause thereof accrued." (Emphasis ours.)

Further, Section 2305.11, Revised Code, was correctly applied. Plaintiffs can recover at the rate of time and one-half, that is, one and one-half times the regular rate of compensation, for but two years prior to the filing of the instant petition.

The members of the police unit described as the vice squad were properly admitted as parties to the action, and the city of Cincinnati was not prejudiced by the amendment of the pleadings. Such amendment had no effect upon the basic issues but merely expanded the membership of the group to which the determination reached by the court applied.

The protest by the city that the judgment is against the manifest weight of the evidence is groundless.

The evidence adduced and the stipulations of fact clearly establish the disparity between employees in the same class. Plaintiffs and the class they represent were not unfettered during the lunch period. The plain truth of their complaint that they were "on call" or "on duty" during that time was subsequently recognized by the city, at least inferentially, when, on February 26, 1966, the day shift detectives were accorded the same treatment given other detectives.

For the reasons given, the judgment of the Court of Common Pleas is affirmed, and this cause is remanded for further proceedings in harmony with such judgment.

*Judgment affirmed.*

LONG, P. J., and HILDEBRANT, J., concur.