EBBING ET AL., APPELLEES, *v.* CITY OF HAMILTON, APPELLANT.

70

(No. CA84-10-126 — Decided
September 30, 1985.)

*Richard J. Wessel,* for appellees.

*Charles A. Turner,* assistant law director, for appellant.

JONES, J. This appeal questions the validity of a "working policy agreement" entered into between a municipality and its police department's collective bargaining agent. The matter was submitted to the trial court on an agreed statement of facts which indicates the following:

Defendant-appellant, city of Hamilton, is a municipal corporation functioning under a charter form of government. The city's charter has been in full force and effect at all times pertinent to the matters herein. The plaintiffs-appellees are all members of the Hamilton Police Department, and all plaintiffs, except for those having attained the rank of lieutenant and above, were represented by Lodge No. 38 of the Fraternal Order of Police, which acted as the collective bargaining unit in the formulation of the working policy agreement in question.

From March 1, 1981 to February 29, 1984, the working policy agreement existed between the city and Lodge No. 38. Under the agreement, some of the plaintiffs worked a five-two shift (five work days followed by two off days) while some plaintiffs worked a four-two shift (four work days followed by two off days). When holidays, off days and uniform maintenance allowances were taken into consideration, those officers working a five-two shift worked several days more than the officers on the four-two shift. The five-two officers did not receive any additional compensation for the difference in days they were required to work.

On March 2, 1983, plaintiffs filed a complaint in the common pleas court, challenging the five-two work schedule. Plaintiffs alleged that the five-two schedule caused them to work more than the officers on the four-two plan and that such extra uncompensated work violated the Hamilton City Charter. Plaintiffs sought declaratory relief and compensation for the additional time they were required to work.

In an opinion dated September 17, 1984, the common pleas court held that the working policy agreement conflicted with the charter provision which required uniform compensation for like and similar services rendered by civil service employees. The court further found, among other things, that those officers with the rank of captain and detective had been discriminated against as a class. The court granted judgment to the plaintiffs for the amounts claimed due and owing to compensate them for the additional time they had worked. The city initiated the instant appeal as a result of the court's decision.

For its first assignment of error, the city claims that the trial court's finding that the working policy agreement violated the city charter provision requiring uniform compensation for like services was contrary to law. This assignment centers around the trial court's conclusion that the agreement between the city and its police force conflicted with Section 010.77, Article X of the Hamilton City Charter and was accordingly invalid. That section of the city's charter reads in pertinent part as follows:

"The Council shall by ordinance establish a *schedule of compensation* for

officers and employees in the classified service which shall *provide uniform compensation for like service. * * *"* (Emphasis added.)

By virtue of its charter, the city has adopted that form of government which permits its exercise of all powers of local self-government. Section 7, Article XVIII, Ohio Constitution. This section of the Constitution, known as the "Home Rule Amendment," establishes that form of municipal government where " * * * [t]he charter is the city's organic law which governs the city's exercise of its home rule powers. * * * " *Northern Ohio Patrolmen's Benevolent Assn.* v. *North Olmsted* (1984), 16 Ohio App. 3d 464, 465. It has been determined by the Ohio Supreme Court that "[t]he right of a municipality to determine the compensation of its employees is, without question, a power of local self-government. * * * " *Teamsters Local Union No. 377* v. *Youngstown* (1980), 64 Ohio St. 2d 158, 160 [18 O.O. 3d 379]. See, also, *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129 [55 O.O. 2d 239], certiorari denied (1971), 404 U.S. 985.

The charter provision quoted above provides for the establishment of a compensation schedule which calls for uniform compensation for like or similar services rendered to the city by a particular group of public employees. Under the provisions of the working policy agreement, some police officers are required to work for a period of time which exceeds the amount of time worked by other officers receiving the same pay, without receiving additional remuneration. The charter provision does provide for minimum and maximum compensation levels within a particular grade or class with increased compensation to be granted on the basis of efficiency and seniority. However, the charter does not contemplate a situation such as that in the case at bar where some officers are required to work for an additional period of time without receiving compensation for such extra services rendered to the city. Clearly, had all plaintiffs worked the same number of hours at the same pay level, there would be uniform compensation for like services. But the compensation is not "uniform" as required by the charter where there are two groups performing the same service for the same amount of pay and one group is required to work an additional period of time while the other group is not subjected to a similar requirement.

The city argues that the agreement does not violate the Hamilton Charter provision in question since the policy was validated by the Ohio General Assembly in legislation establishing public employee collective bargaining procedures. The city specifically relies on Section 5 of Am. Sub. S.B. No. 133 which states:

"Any written contract, agreement, or memorandum of understanding in effect on April 1, 1983 or entered into between January 1, 1983 and March 31, 1984 between a public employer and an employee organization shall be deemed valid for its term, except as provided in division (D) of Section 4 of this act." (See 140 Ohio Laws, Part I, 336, 368.)

Since the working policy agreement in the case at bar was in effect on April 1, 1983, the city takes the position that it was validated by Section 5 of Am. Sub. S.B. No. 133. We do not agree.

The ultimate effect of permitting this legislation to validate the agreement under consideration would be an impermissible invasion of a charter municipality's right to home rule as established by its duly adopted charter. Such a position would defeat the purposes of the Home Rule Amendment of the Ohio Constitution. This is not to say that the legislation in question is unconstitutional, but simply that it does not apply to charter municipalities where its application would be contrary

to and result in a violation of a specific charter provision. Accordingly, we find the first assignment of error not to be well-taken and hereby overrule the same.

The second assignment of error raised by the city claims that the trial court erred in finding that those officers who were detectives and captains were discriminated against as a class. All of the detectives and captains in the department worked a five-two schedule. The trial court held that these officers were discriminated against and were entitled to be equally compensated with those officers of other ranks who worked a four-two schedule.

The city contends that the uniform compensation requirement of the Hamilton Charter does not mandate uniform compensation for different classifications or ranks within the police department. Since all officers with the rank of captain and all officers with the rank of detective work the same schedule, the city submits that none of those officers was discriminated against in relation to other officers within that same particular rank. Appellees' position is that the police department as a whole must be viewed as one class and that regardless of rank there is a discriminatory work policy against the officers working the five-two schedule as compared to the officers working the four-two schedule.

The basic philosophy behind civil service legislation is parity between the members of a particular class or group so that none within the group is preferred as the result of standards applied on a discriminatory basis. *Niswonger v. Cincinnati* (1968), 17 Ohio App. 2d 200, 205 [46 O.O. 2d 274]. In the case at bar, the detectives and captains all work the same shift. While such may have resulted in these officers working extra uncompensated hours as compared to sergeants or patrolmen, such does not amount to discrimination. The different ranks within the Hamilton Police Department constitute different classes. A captain might well expect to work longer hours and additional time than a patrolman. He gets paid more; he receives various intangible emoluments of office; and he frequently is following a path leading to appointment as chief. He can be compared to the manager or owner of a commercial business who often works longer and harder than his employees. Each is presumably willing to exert the extra effort because the ultimate rewards are greater. Because of the varying duties and responsibilities inevitably associated with different ranks of a police force, we do not view the entire force as one class. Where all members of one class or rank are receiving the same compensation for similar services rendered by that particular rank, there is no discrimination among the members of that rank. See *Niswonger, supra.* Consequently, we find no violations of the charter provision requiring uniform compensation in regards to the detective and captain ranks. Accordingly, the second assignment of error is well-taken and the part of the trial court decision concerning those officers holding the rank of captain or detective is hereby reversed.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings according to law and not inconsistent with this opinion.

*Judgment affirmed in part, reversed in part, and cause remanded.*

HENDRICKSON and NICHOLS, JJ., concur.

NICHOLS, J., of the Court of Common Pleas of Madison County, sitting by assignment in the Twelfth Appellate District.